# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-10015

United States Court of Appeals
Fifth Circuit

**FILED**
May 9, 2019

Lyle W. Cayce
Clerk

GABRIEL CARDONA,

     Petitioner - Appellant

v.

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

     Respondent - Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 7:16-CV-125

Before HIGGINBOTHAM, SMITH, and HIGGINSON, Circuit Judges.

PER CURIAM:*

    Gabriel Cardona petitioned the district court for habeas relief, challenging his conviction and sentence in connection with a guilty plea to three counts of murder. Conducting a Rule 4 screening prior to the Director's response, the district court dismissed Cardona's petition as time barred. We

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-10015

granted a certificate of appealability on the issue of statutory tolling. We now affirm the district court.

## I.

On April 16, 2007, a Texas trial court sentenced Cardona to 80 years' imprisonment upon his plea of guilty to three counts of murder. Cardona did not appeal his conviction, and it became final at the expiration of the appeals window, on May 16, 2007.

Cardona's incarceration began with one month at the Webb County Jail. During this time, Cardona alleges there were no assistants "trained in the law to assist prisoners," and he lacked access to an "adequate" or "meaningful" law library. He does not offer his asserted deficiency in the library—if there was a library—and equivocates on whether he had access to the text of AEDPA.[1]

On June 27, 2007, Cardona was moved to the Byrd Transit Unit Facility, where he remained for an additional two months. Cardona allegedly faced "restrictions and obstacles," but he does not specifically address whether he had access to a law library or legal assistance during his stay at this Facility.

On September 5, 2007, Cardona began a seven-month stay at the Barry B. Telford Unit. When he arrived at Telford, the prison was in lockdown. Cardona does not state whether inmates were able to access the prison law library or receive legal assistance during the lockdown. Once the lockdown period ended, between October 2007 and April 2008 Cardona had access to the prison's law library. Cardona alleges that his use of the library during this period was limited by his language ability, and the prison's failure to provide legal assistance, including inmate-to-inmate assistance and translators. While

---

[1] In the district court Cardona stated that the "jail [did not] have access to the AEDPA statute[,] only a few outdated 'dusty' law books," but in his briefs Cardona concedes he "does not know" whether the law library—at Webb or elsewhere—had the statute, only that, if it did, the statute remained "undiscovered in the books."

Cardona states he was "functionally illiterate," "steeped in Spanish slang," and "ha[d] difficulties with English/law comprehension," he does not claim he was unable to read, comprehend, and communicate in English generally. His alleged "functional illitera[cy]" refers to a lack of formal education and an unfamiliarity with legal "jargon"; that he "was clueless, unfamiliar with the legal jargon in books, and couldn't comprehend what he read at all." As for Telford's library, Cardona alleges he "had no access to the AEDPA statute," but not that the library lacked a copy of the statute. Rather, he alleges only that the prison library lacked a Spanish translation of AEDPA and that there were no staff translators, such that AEDPA "remain[ed] undiscovered in the books." Moreover, according to Cardona, the "focus and entire communication among law library attendees" was on state habeas procedures, not federal postconviction relief, and so Cardona presumed that state and federal procedures were identical, and remained unaware of federal habeas procedural requirements.

On April 1, 2008, Cardona was taken into federal custody on a bench warrant, remaining in federal custody at the Corrections Corporation of America facility in Laredo. He asserts that during the transition to federal custody, he was not permitted to bring personal belongings, like legal papers. Cardona characterizes federal facilities during this and subsequent stays in federal custody as providing only a "woeful law library or no library," and states that the "AEDPA statute was unavailable." Again Cardona does not clarify at what points he had access to a law library, what was "woeful" when he did, and whether he had legal assistance during his time in federal custody.

In April 2009, Cardona returned to Telford for the following nine months. Shortly after his return, he was placed in administrative segregation, where he accessed legal material through an "exact cite" system. He could request three items—cases or book excerpts—three days a week by providing the

citation to prison staff. During this period his requests were allegedly "persistently denied and delayed."

Cardona's capacity to produce writing on legal subjects can be sampled by considering two documents from this nine-month stay in Telford. In June 2009, Cardona filed a grievance with the Texas Department of Criminal Justice, complaining of his placement in administrative segregation. Citing, inter alia, the Eighth Amendment and provisions of Texas statutory and regulatory law, Cardona identified a putative "major violation of [Department] rules, regulations, policies [and] procedures" and asserted an entitlement "to a hearing [and] notification . . . or release[]" from administrative segregation. Two months later, Cardona submitted a letter to the Texas trial court expressing his intent to "raise several potential grounds that I believe would lead to the withdrawal of the guilty plea." Citing provisions of the Federal Constitution and articles of the Texas Code of Criminal Procedure, Cardona requested the appointment of not one, but two attorneys to prepare his claims. The Texas court denied his motion.

In February 2010, Cardona returned to state custody at the Allred Unit in Iowa Park, Texas after one month in federal custody under a bench warrant. He remained at Allred, with two additional periods in federal custody totaling seven months.[2] His personal belongings were lost in transition to Allred. After a short period in the general population, Cardona was placed in administrative segregation. Beginning in 2015, Cardona filed a number of grievances with the Department alleging delays, resistance, and dilatory conduct by law-library staff. In March 2015, the journalist Dan Slater approached Cardona about a book project, and in the process furnished Cardona with court papers from his

---

[2] Cardona was taken into federal custody between February and July 2014 and February and April 2016.

4

## No. 17-10015

case. According to Cardona, these papers provided the factual predicates for his habeas claims.

On May 5, 2015, Cardona filed a petition for postconviction relief in the Texas Court of Criminal Appeals. On April 13, 2016, the Court of Criminal Appeals denied relief with no written order. It also denied Cardona's motion for rehearing on June 27, 2016. While his state habeas proceedings were pending, in December 2015 Cardona bought a "federal habeas book." He alleges that upon receipt of this book he learned for the first time of AEDPA and its limitations period.

On October 14, 2016, Cardona filed a petition for habeas relief in the district court challenging his conviction on due process, equal protection, and ineffective assistance of counsel grounds. The district court assigned the case to a magistrate judge for Rule 4 preliminary review of the petition, prior to ordering a response from the Director.[3] The magistrate judge recommended denial of Cardona's petition with prejudice. Raising AEDPA timeliness sua sponte, the magistrate judge determined the limitations period expired on May 17, 2008, making Cardona's petition untimely. While Cardona made "cursory allegations that the law library created a State impediment to his application," the magistrate judge found Cardona failed to make the necessary showing for statutory tolling.

The district court accepted the magistrate judge's report and recommendation over Cardona's objections and dismissed Cardona's petition

---

[3] Under Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner. If the petition is not dismissed, the judge must order the respondent to file an answer, motion, or other response within a fixed time, or to take other action the judge may order. In every case, the clerk must serve a copy of the petition and any order on the respondent and on the attorney general or other appropriate officer of the state involved."

No. 17-10015

as time barred. Cardona applied for a certificate of applicability on the question of whether statutory tolling applied to his petition. This court granted the COA "with respect to Cardona's argument that he is entitled to statutory tolling due to a state-created impediment." This appeal followed.

## II.

We have jurisdiction under 28 U.S.C. § 2253(a) and (c)(1)(A). The district court issued a final order denying Cardona habeas relief and we granted a COA. We review the district court's findings of fact for clear error, deciding questions of law de novo.[4] We construe Cardona's pro se brief liberally.[5]

Under AEDPA, absent statutory or equitable tolling, a petitioner for federal habeas relief from a state-court conviction must file his petition within one year of the state-court judgment becoming final.[6] Where the state creates an unlawful impediment to timely filing, the one-year limitations period runs from "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action."[7] In order to invoke statutory tolling on this basis, the petitioner must show that: (1) he was subject to state action (2) that violated the Constitution or federal law and (3) prevented him from filing a timely petition.[8] For purposes of AEDPA statutory tolling, state action is not confined to officials' affirmative

---

[4] *Egerton v. Cockrell*, 334 F.3d 433, 436 (5th Cir. 2003).

[5] *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding pro se submissions "to less stringent standards than formal pleadings drafted by lawyers").

[6] 28 U.S.C. § 2244(d)(1).

[7] *Id.* § 2244(d)(1)(B).

[8] *Egerton*, 334 F.3d at 436.

actions: the statute also contemplates that omissions can qualify as state-created impediments.[9]

The Constitution provides prisoners no freestanding right to a law library or to legal assistance in preparation of habeas petitions.[10] It does, however, provide under the First and Fourteenth Amendments a right of access to the courts; in the habeas context, "the state and its officers may not abridge or impair petitioner's right to apply to a federal court for a writ of habeas corpus."[11] "Meaningful access" is the touchstone.[12] The state is not required to "enable the prisoner to *discover* grievances, and to *litigate effectively* once in court."[13]

Meaningful access to the courts implicates the state's provision of legal resources to prisoners. In *Bounds v. Smith*, the Supreme Court held "that the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."[14] With respect to libraries and assistance, *Bounds* holds that either may suffice alone. *Bounds* does not guarantee prisoners any particular vehicle for meaningful access to the courts; rather it guarantees "the capability of bringing contemplated challenges to

---

[9] *Id.* at 438.

[10] *Lewis v. Casey*, 518 U.S. 343, 350 (1996).

[11] *Id.* at 379; *Bounds v. Smith*, 430 U.S. 817, 822 (1977) (quoting *Ex parte Hull*, 312 U.S. 546, 549 (1941)).

[12] *Bounds*, 430 U.S. at 823.

[13] *Lewis*, 518 U.S. at 354.

[14] *Bounds*, 430 U.S. at 828.

sentences or conditions of confinement before the courts."[15] Providing access to a prison law library and legal assistance are potential avenues of fulfilling this obligation.

"The absence of all federal materials from a prison library (without making some alternative arrangements to apprise prisoners of their rights) violates the First Amendment right, through the Fourteenth Amendment, to access to the courts," and can constitute a state-created impediment for AEDPA tolling purposes.[16] In light of *Bounds*, "a state's failure to provide the materials necessary to prisoners to challenge their convictions or confinement . . . constitutes an 'impediment' for purposes of invoking § 2244(d)(1)(B)."[17]

Cardona's state petition was filed more than 95 months (almost eight years) after his conviction became final. Assuming arguendo his state petition was properly filed (such that time spent in state habeas court "shall not be counted toward any period of limitation"),[18] Cardona would need the limitations period to be tolled for at least 83 months to avoid the time bar.

During his time in the Webb County Jail, and the Telford Unit post-lockdown, Cardona concedes he had access to a prison law library. Cardona does not allege that he lacked access to the text of AEDPA during this time—he "does not know" whether or which libraries carried it—just that he was "clueless, unfamiliar with the legal jargon in books, and couldn't comprehend what he read at all." Read carefully, Cardona's brief alleges that access to a library standing alone did not satisfy the State's duty: "[a] law library in and of itself and here by its operation [wa]s inadequate," because as an uneducated

---

[15] *Lewis*, 518 U.S. at 356 (interpreting *Bounds*).

[16] *Egerton*, 334 F.3d at 438.

[17] *Id.* at 438–39.

[18] 28 U.S.C. § 2244(d)(2).

and "functionally illiterate" individual, "Cardona needed a legal assistant." But Cardona's allegations do not support the conclusion that his command of English or the law was too weak to allow use of the library. The record provides numerous examples from Cardona's incarceration evidencing an ability to organize and produce documents asserting legal claims—whatever their merits—citing provisions of law that he considered relevant and supportive. We find no error in the district court's finding that Cardona did not allege facts indicating he was incapable of using library materials to access the courts during this period.

Cardona does not specifically allege that he lacked access to a library during his three months in the transit unit and lockdown at the Telford Unit. Assuming Cardona's 20 months in federal custody can be considered under Section 2244, Cardona concedes that during at least some of this time he had access to a library, albeit a library he found "woeful"—without explaining how any inadequacy burdened his ability to access the courts. During other times (undefined in duration) he alleges there was no library, but is silent about legal assistance. He alleges AEDPA was "unavailable" while he was in federal custody, but elsewhere concedes this does not necessarily mean a copy of the statute was not physically present, but only that even if it were present, Cardona was oblivious to the statute's applicability and importance to his potential claims. We find no error in the district court's finding that Cardona's thin account of what was deficient in federal custody, the transit unit, and Telford Unit lockdown do not establish official impediments to his access to the courts for these 23 months.

We need not look to the remainder of Cardona's incarceration before the filing of his petition, because even if the limitations period were tolled for that time, his petition would still be untimely.

No. 17-10015

## III.

We AFFIRM the district court's denial of Cardona's petition as time barred.